IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN E. JACKS, | ) | CASE NO. 4:19cv2689 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| CITY OF YOUNGSTOWN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

Jacks lives in Pennsylvania but owned a house situated in the Defendant City of Youngstown, Ohio ("City"). In February and April 2015, City code officials sent notices to Jacks setting forth code violations they found on the property; the first notice was sent to a wrong address but the second notice was sent to the right address and Jacks received it. In May 2015, Jacks responded to the notice he received and requested a hearing. He did not hear back from the City or receive further communications. In January 2016, the City demolished his house.

In November 2017, the City sought to recover demolition damages against Jacks in Youngtown Municipal Court. In November 2019, Jacks, proceeding pro se, filed a complaint in this Court. In his Amended Complaint, Jacks brings 34 claims against the City and City code officials Defendants Jean Schaefer ("Shaefer") and Abigail Beniston ("Beniston"), alleging that they violated his 4th, 5th, and 14th Amendment rights when they unlawfully seized his house and demolished it without providing him due process. He also alleges that Defendants' conduct violated Ohio law and various Youngstown ordinances. Defendants have filed a Motion for Summary Judgment, arguing, among other things, that Jacks's federal law claims are time-barred. Doc. 39. Jacks filed an opposition brief. Doc. 45. Because the Court finds that Jacks's

federal claims are time-barred, Defendants are entitled to summary judgment on those claims. The Court declines to exercise jurisdiction over Jacks's state law claims and, therefore, dismisses those claims without prejudice.

## I. Background Facts[1]

Jacks is a resident of Pennsylvania.  Doc. 20, p. 2, ¶3.  He has 45 years of "professional experience in the real estate and construction business, including purchases, rehabilitation, and hands on labor for more than 80 residential, multifamily, small and large commercial properties."  Id.

At some point in time, Jacks had purchased a commercial building in the City of Youngstown.  Id., p. 10, ¶29.  He had interactions with City building code employees regarding that building, and the City ended up demolishing it sometime around 2014.  Id.

In November 2008, Jacks purchased a house on Neosho Road in Youngstown (hereinafter, "the property").  Id., p. 3, ¶6.  He alleges that the property was in good repair when he bought it and it had been vacant for five months.  Id.  Jacks, who was 62 years old when he purchased the property, intended to use it as his retirement home.  Id, ¶5.  He does not state how much he paid for it but alleges that the previous owner had bought it for $72,000 in 2006.  Id., ¶6.

After he bought the property, Jacks continued to live in Pennsylvania.  He alleges that he visited the property "weekly and monthly… for the next 6 years."  Id., p. 4, ¶8.  He states that he kept the property clean and safe during that time.  Id.  However, he concedes that he received a notice from the City, on March 8, 2012, for "'tall weeds in the garden' and 'scraping any loose

---

[1] These facts are taken from Jacks's Amended Complaint.  The Amended Complaint is largely devoid of relevant dates and information, which the Defendant, in its opposition brief, does not supply.  For example, there is a history of litigation between the parties regarding the demolition of the property at the municipal court and/or county court level, and yet neither party clearly states what that litigation involved, when it commenced, or what the outcome was.

paint,'" matters he addressed "immediately after first thaw." Id. With respect to that March 8, 2012 notice, Jacks states that the City mailed "multiple Notices and increased fines" to an incorrect address in Ohio, resulting in "an ongoing debacle of wrongfully addressed notices," including appeals, that were finally "put to rest" at a "prosecutor[']s hearing" in November 2014, wherein the City discovered its errors with respect to those notices. Id.

Jacks alleges that he last visited the property in December 2014, at which time he spent "two full days inspecting, securing, and addressing, cleaning and correcting any possible problems or issues throughout the entire property and grounds in concern for the next winter months weather." Id., ¶10.

On February 27, 2015, Defendant Jean Schaefer, an inspector for the City, visited the property and issued a Notice to Repair (Notice #1) containing code violations she found on the property.[2] Id., ¶11. She mailed it to an incorrect address and Jacks never received it. Id.

On April 27, 2015, Defendant Abigail Beniston, the City's chief code enforcement designee, issued a Notice to Repair (Notice #2) listing the code violations found on the property. Doc. 20, pp. 9-11, ¶¶27-31. Notice #2 was sent to Jacks's correct address in Pennsylvania and he received it. Doc. 20, p. 9, ¶27; p. 11, ¶31.

On May 5, 2015, Jacks mailed a response to Notice #2. Id., p. 11, ¶32. In it, he challenged the code violations, stated his concern for the conduct of City code officials, requested a Board of Appeals hearing, and requested photographs of the property purporting to show the code violations. Id. The City never scheduled a hearing or notified him of a hearing. Id. Jacks also alleges that a notice to condemn was never posted on the property and was never mailed to him. Id., pp. 8-9, ¶¶23, 25-26.

---

[2] Jacks does not disclose what code violations were listed on the notice.

3

The City contracted with a third party to demolish Jacks's house in December 2015, and the demolition was completed in January 2016. Id., p. 18, ¶69; p. 19, ¶75; p. 28, ¶112.

In their briefs, the parties agree that the City sued Jacks in November 2017 to recover demolition costs.[3] Doc. 45, p. 3; Doc. 39, p. 6. The parties also agree that Jacks prevailed in that action. Doc. 45, p. 7; Doc. 39, p. 6, n.3. Jacks also alleges that he sued the demolition contractor in common pleas court in September 2019 (before he filed this lawsuit) but does not state what the outcome of that litigation was or whether it is still pending. Doc. 45, pp. 7-8.

### B. The claims in Jacks's Amended Complaint

In his Amended Complaint, Jacks alleges the following claims:

Count 1: 5th and 14th Amendment due process violation when Schaefer sent Notice #1 to the wrong address;
Count 2: Constitutional and state law violations when Schaefer did not apply due diligence in searching for Jacks, relying on *Jones v. Flowers*, 547 U.S. 220 (2006);
Count 3: Violation of 4th Amendment and Ohio law when Schaefer wrongfully entered Jacks's property in February 2015;
Count 4: Due process violation when Schaefer improperly mailed Notice #1, thereby failing to advise Jacks of his appeal rights;
Count 5: Due process and City ordinance violations when the City failed to post and/or mail a "Notice of Condemned";
Count 6: Shaefer violated state law and a City ordinance for dereliction of duty by failing to post and mail a "Notice of Condemned";
Count 7: 5th and 14th Amendment and City ordinance violations when the City denied Jacks the right to appeal;
Count 8: Due process violation when the City proceeded with demolition before Jacks's rights to comply had expired;
Count 9: Tampering with evidence and dereliction of duty under Ohio law because Notice #2 was exaggerated, false and improper;
Count 10: Falsifying writings in public records in violation of Ohio law in both Notice #1 and Notice #2;
Count 11: Due process violation and violation of Jacks's right to appeal when the City did not schedule a hearing as Jacks had requested in May 2015;
Count 12: Due process violation when the City officials continued to mail documents to an incorrect address in the summary of 2015, interfering with Jacks's appeal rights;
Count 13: Due process violation for the City's failure to send a "Notice of Condemned" after Jacks had requested a hearing in May 2015;
Count 14: 5th and 14th Amendment and City ordinance violations for failing to provide

---

[3] The City asserts that the lawsuit was filed on November 14, 2017. Doc. 39, p. 6. Jacks asserts that the lawsuit was filed on November 20, 2017. Doc. 45, p. 3.

4

Jacks with a right to appeal a second "Notice of Condemned" and failing to provide evidence in support of its demolition;

Count 15: Conspiracy and intent to defraud in violation of Ohio law when Schaefer and Beniston knew that notices had been sent to Jacks at an incorrect address and they ignored Jacks's request for appeal with an intent to demolish Jacks's property;

Count 16: Illegal trespass and soliciting in violation of state law when the City hired HzW Environmental Consultants to enter Jacks's property without a warrant;

Count 17: Violation of the 4th Amendment and Ohio law when the City solicited HzW to enter onto his property without a warrant;

Count 18: Illegal trespass and solicitation in violation of state law when the City hired C. Crump, Inc. to enter Jacks's property without a warrant for the purposes of submitting a demolition bid;

Count 19: Violation of the 4th Amendment and Ohio law when the City solicited C. Crump, Inc. to enter onto his property without a warrant;

Count 20:[4] The City was negligent under Ohio law when it contracted with C. Crump, Inc., to demolish Jacks's property;

Count 21: Violations of the 4th, 5th, and 14th Amendments and Ohio law when the City and officials conspired to hire C. Crump, Inc., to demolish Jacks's property without proper permits or notice to Jacks and when the property was not "blighted" property;

Count 22: Violation of Ohio law when the City, Shaefer and Beniston engaged in corrupt activity and conspired to defraud Jacks of his property;

Count 23: Conspiracy to defraud with a third party when the City and City code enforcement officials selected C. Crump, Inc. as the demolition company;

Count 24: The City purposefully withheld evidence in the municipal court case it filed against Jacks in November 2017;

Count 25: The City withheld evidence during the municipal court case in violation of Ohio law when it did not answer Jacks's interrogatories regarding government grant money the City received for demolishing properties;

Count 26: Altering/tampering document evidence in violation of Ohio law when the City provided altered copies of photographs of Jacks's property during the municipal court case;

Count 27: City code officials violated Ohio law when they presented altered photographs into evidence with intent to mislead a public official (the Ohio magistrate overseeing the municipal court case);

Count 28: The City, City code officials, and C. Crump, Inc., conspired to defraud Jacks of his property in violation of Ohio law;

Count 29: The City committed theft by fraud of Jacks's property in violation of Ohio law;

Count 30: The City failed to provide oversight of its code official employees;

Count 31: The City failed to adequately train its code official employees;

Count 32: The City has a custom and practice of erroneous code enforcement;

Count 33: The City is liable for wrongful demolition;

Count 34: Jacks experienced pain, suffering, and emotional distress as a result of the demolition of his property.

---

[4] There is no Count 20 in the Amended Complaint and there are two Count 21s. Doc. 20, pp. 18-20. There is no Count 23 and there are two Count 24s. Doc. 20, pp. 22-23. For clarity, the Court refers to the first Count 21 as Count 20 and the first Count 24 as Count 23.

Doc. 20, pp. 4-33.

In their brief in support of their Motion for Summary Judgment, Defendants argue all of the following: (1) Defendants Shaefer and Beniston are not proper parties, as they are sub-units of the City; (2) Jacks's federal claims are barred by the statue of limitations; (3) the Court lacks subject matter jurisdiction over Jacks's state law claims because Jacks fails to show he meets the $75,000 amount in controversy requirement pursuant to 28 USC § 1332; (4) Jacks's claims are barred by the doctrines of issue preclusion and claim preclusion; and (5) Defendants are entitled to qualified immunity. Doc. 39.

## II. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. The movant "bears the initial responsibility of informing the district court of the basis for its motion, identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted).

After the moving party has carried its initial burden of showing that there are no genuine issues of material fact in dispute, the burden shifts to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Id*. at 587 (internal quotations and citations omitted). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*. at 586. The non-moving party must present specific facts that demonstrate there is a genuine

issue of material fact for trial. *Id*. at 587. "The 'mere possibility' of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1986).

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A genuine issue for trial exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Muncie Power Producers, Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 248). Thus, for a party to avoid summary judgment, "there must be evidence on which a jury could reasonably find for [that party]." *Anderson*, 477 U.S. at 252. Accordingly, in determining whether summary judgment is warranted, a court generally asks, "whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Id*. (citation omitted).

### III. Analysis

#### A. The evidence considered by the Court

Neither party has submitted proper evidence to the Court in support of, or in opposition to, the City's motion. Jacks's Amended Complaint does not constitute evidence of record because it is not a verified complaint, *i.e.*, it lacks an assertion that the statements within it were made under the penalty of perjury. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (a verified complaint carries the same weight as an affidavit for the purposes of summary judgment if it is signed under penalty of perjury pursuant to 28 U.S.C. § 1746 (citing *Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993)).

For their part, Defendants submitted two documents attached to their brief, neither of which has evidentiary value. The first document purports to be a copy of a complaint the City filed against Jacks on November 14, 2017, in Youngstown Municipal Court. Doc. 39, p. 6; Doc.

39-1. But there is no accompanying affidavit stating, under penalty of perjury, that that document is what the City claims it to be. And the document itself is unsigned, undated, and does not contain a file stamp from the Youngstown Municipal Court. The second document purports to be Jacks's answer and exhibits he filed in that municipal court case. Doc. 39-2. Similarly, the City provided no accompanying affidavit and the document does not contain a file stamp from the Youngstown Municipal Court.

Nevertheless, the Court finds that it has sufficient information before it to make a determination regarding whether Jacks's federal claims are time-barred. In doing so, the Court observes that the parties largely agree on the singular, operative fact needed to determine whether Jacks's federal claims are time-barred: the estimated demolition date.[5] See Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may … consider the fact undisputed for purposes of the motion").

As stated above, neither party provides the precise date that the property was demolished. Defendants "infer, based on their reading of Jacks's Amended Complaint, that the property was demolished on December 10, 2015. Doc. 39, pp. 1, 5 (citing Doc. 20, pp. 18-20). However, the section of the Amended Complaint cited by Defendants only states the City provided the demolition company a permit to demolish the property on December 10, 2015, not that the property was demolished on December 10.

Nevertheless, Jacks does not dispute that date in his opposition brief. A careful reading of the Amended Complaint shows that Jacks alleges that the demolition was completed in January 2016. Jacks states:

---

[5] The parties also appear to agree, as they do not dispute, that the City assessed code violations against Jacks's property and generated two notices, the first on February 27, 2015, and the second on April 27, 2015, and that the City sued Jacks in Youngstown Municipal Court in November 2017, to recover demolition costs.

8

> Upon completing the wrongful demolition of their object target in their conspiracy to defraud (completed January 2016), the City and its Code officials … with the co-operation of contractor [Crump, Inc.], did complete the specifically stated criminal offence of fraud against Plaintiff, with Plaintiff Jacks's property being the object of their Fraud.

Doc. 20, p. 28, ¶112. Taking the facts in the light most favorable to Jacks, the Court credits the later demolition date, and, therefore, finds that the property was demolished in January 2016.

### B. Jacks's federal claims are time-barred

Jacks's claims alleging that the City and City officials violated his constitutional rights are rooted in 42 USC § 1983; i.e., that state actors deprived him of his constitutional rights.[6] Additionally, although Jacks does not cite *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Court liberally construes his Amended Complaint to state a *Monell* claim when he alleges that the City failed to oversee its code officials, failed to train code officials, and had a custom and practice of unlawful code enforcement. Doc. 20, pp. 28-31 (Counts 30, 31, 32). *See Monell, supra* (a municipality may be liable under § 1983 when its official policy or custom serves to deprive an individual of his or her constitutional rights).

#### 1. The two-year limitations period in RC 2305.10 applies to Jacks's § 1983 claims

The City asserts that the two-year statute of limitations period in Ohio Revised Code 2305.10 applies to Jacks's federal claims. Doc. 39, pp. 3-5. The Court agrees.

A cause of action brought pursuant to 42 U.S.C. § 1983 is subject to the statute of limitations set forth in the state's general personal injury statute. *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003); *Rodriguez v. City of*

---

[6] 42 U.S.C. § 1983 provides,
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ….

9

*Cleveland*, 439 Fed. App'x 433, 458 (6th Cir. 2011) (citing *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 855 (6th Cir. 2003)).  In Ohio, that general personal injury statute is Ohio Revised Code § 2305.10, which sets forth a two-year statute of limitations period.  *Id*. (applying the two-year limitations period to the plaintiffs' fourth amendment claims); *see also Woods Cove, III, LLC v. City of Akron*, 2018 WL 4104186, at *9 (N.D. Ohio Aug. 29, 2018) (applying Ohio's two-year statute of limitations period to plaintiffs' §1983 claims arising from the city's demolition of properties).  Accordingly, the two-year limitations periods set forth in RC 2305.10 applies to Jacks's § 1983 claims.

### 2. The statute of limitations for all Jacks's § 1983 claims began to run when he knew or should have known that the City demolished his property

Although a court looks to state law to determine the limitations period, "the time at which a § 1983 claim accrues 'is a question of federal law,' 'conforming in general to common-law tort principles.'"  *McDonough v. Smith*, -- U.S. --, 139 S. Ct. 2149, 2155, 204 L. Ed. 2d 506 (2019) (quoting *Wallace v. Kato*, 549 U.S. at 388).  To determine what date the statute of limitations begins to run, a court "begins with identifying 'the specific constitutional right' alleged to have been infringed."  *McDonough*, 139 S. Ct. at 2155 (quoting *Manuel v. Joliet*, --U. S. --, 137 S. Ct. 911, 920, 197 L.Ed.2d 312 (2017)).  "After pinpointing that right, courts still must determine the elements of, and rules associated with, an action seeking damages for its violation."  *Manuel*, 137 S. Ct. at 920 (citing *e.g.*, *Carey v. Piphus*, 435 U.S. 247, 257–258 (1978)).  The standard rule is that accrual occurs when the plaintiff has a complete and present cause of action, i.e., when the plaintiff can file suit and obtain relief, *Wallace*, 549 U.S. at 388, and "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Scott v. Ambani*, 577 F.3d 642, 646 (6th Cir. 2009) (citing *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005)).  "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of

10

reasonable diligence." *Id*. (quoting *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir.1984)).

### a. All Jacks's § 1983 claims have the same accrual date

Jacks's Fourth Amendment claims all generally allege that an unreasonable search and seizure occurred when City officials and others unlawfully entered upon his property prior to and on the date his property was demolished. Thus, the triggering event for the limitations accrual date for those claims is the date that Jacks's property was demolished. *Wallace*, 549 U.S. at 391–92 (the statute of limitations on plaintiff's 4th Amendment unlawful arrest claim accrued at the time of the seizure); *Moore v. Moore*, 2019 WL 6683171, at *4 (N.D. Ohio Dec. 6, 2019) (the accrual date for a 4th Amendment unlawful seizure of property claim was when the property was seized).

Jacks's due process claims under the 5th and 14th Amendments all generally allege that the City failed to provide adequate notice to him prior to demolishing his property. The limitations period on his due process claims is triggered by the date his property was demolished. *Wallace*, 549 U.S. at 388; *Woods Cove, III, LLC*, 2018 WL 4104186, at *8–9 (due process claims against city alleging inadequate notice prior to demolition accrued when the property was demolished).

Jacks's *Monell* claims arise out of the same complained-of conduct: City officials provided inadequate notice and demolished his property. The limitations period on his *Monell* claims are similarly triggered by the date his property was demolished. *Wallace*, 549 U.S. at 388.

Finally, Count 21 of Jacks's Amended Complaint is titled, "City Violation USC 4th Amendment, Illegal Search/Seizure 4th Offence, and Violation of 5th and 14th Amendment; Taking of One's property." Doc. 20, p. 20. Jacks explains that, when the City permitted the contractor to demolish his property, "the City did violate A) Plaintiffs' 4th Amendment USC

11

Rights of protection from illegal Search and Seizure, as a distinctly second offense, and B) Taking of one's property without Due Process of Law (permission, or Court Warrant) as provided in the 5th and 14th Amendment of the Constitution." Doc. 20, p. 20. The specific constitutional rights alleged to have been infringed in Count 21 are the same as above: a 4th Amendment violation for unreasonable search/seizure and a due process violation for demolishing the property without proper notice.

### b. Jacks knew or should have known that his property had been demolished shortly after the demolition

Jacks's property was demolished in January 2016. Jacks does not state when he learned his property was demolished.[7] The parties appear to agree that Jacks knew his property was demolished at least by November 2017, when the City filed a case in municipal court to recover demolition costs. Doc. 45, p. 3; Doc. 39, p. 6. Jacks filed his federal complaint on November 15, 2019, two years after the City filed its municipal court action.

The statute of limitations on Jacks's federal claims began to run when Jacks knew or *should have discovered, through the exercise of reasonable diligence,* that his property had been demolished. *Scott*, 577 F.3d at 646. The Court finds that there is no genuine issue of material fact that Jacks knew or should have discovered, through the exercise of reasonable diligence, that his property had been demolished more than two years before he filed his complaint in this court. Although the City demolished Jacks's property in January 2016, Jacks appears to claim that he did not find out until November 2017. It is not reasonable for Jacks, a real estate professional with 45 years of experience, to fail to visit his property or send an agent to visit his property for

---

[7] In his opposition brief, Jacks actually asserts that he learned that his property was demolished in November 2015, before the property was demolished. Doc. 45, p. 3 (stating that he learned the City demolished his property six months after he mailed a request for a hearing in May 2015).

almost two years.[8]  *See Karkoukli's, Inc. v. Dohany*, 409 F.3d 279, 286 (6th Cir. 2005) ("The law expects at least some diligence from the property owner as well as the local officials.").  Had Jacks or his agent visited the property between January 2016 and November 2017, Jacks would have learned that his property had been demolished.

      Moreover, Jacks admits that he received a notice from the City dated April 27, 2015, setting forth code violations at the property.  Doc. 20, p. 9, ¶27; p. 11, ¶31.  Thus, he was on notice that the property had reported code violations and yet he still did not visit the property.  He admits that he had had prior dealings with the City regarding another property that also had been demolished, i.e., he was aware that demolition was a possible outcome of unaddressed code violations.  Doc. 20, p. 10, ¶29.  Finally, he states that he responded to the April 27, 2015 notice on May 5, 2015 and requested a hearing.  Doc. 20, p. 11, ¶32.  He claims that, by requesting a hearing, he triggered a 60-90-day stay of proceedings and that he should have been contacted to schedule a hearing.  Doc. 20, p. 12, ¶¶37, 39.  And yet, despite not receiving any contact regarding a hearing and after any 90-day stay expired, he "continued to wait" and took no further action until he responded to the municipal court action filed by the City in November 2017.  Doc. 20, p. 12, ¶40.  In short, for all the reasons stated above, there is no genuine issue of material fact regarding Jacks's failure to exercise reasonable diligence; i.e., he should have discovered that his property had been demolished much earlier than November 2017.  Accordingly, his complaint, filed November 15, 2019, is outside the 2-year statute of limitations period and is time-barred.

      **C. The Court declines to exercise supplemental jurisdiction over Jacks's state law claims**

---

[8] Jacks states that he last visited the property in December 2014, a year before it was demolished, three years before the City filed its lawsuit against him in municipal court to recover demolition costs, and almost five years before he filed this lawsuit.  Doc. 20, p. 4, ¶20.

13

Jacks's remaining claims are state law claims over which this Court has supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a).  However, pursuant to 28 U.S.C. § 1367(c)(3), a district court should ordinarily decline to exercise supplemental jurisdiction over claims when the court has dismissed all claims over which it has original jurisdiction.  *See Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)).  Because Defendants are entitled to summary judgment on the federal claims in Jacks's Amended Complaint, the Court declines to exercise supplemental jurisdiction over the remaining state law claims.  Therefore, Jacks's state law claims are dismissed without prejudice.  *See id*.

### IV. Conclusion

For the reasons explained above, the Court **GRANTS** Defendants' Motion for Summary Judgment on Jacks's federal claims.  The Court declines to exercise supplemental jurisdiction of Jacks's remaining state law claims; accordingly, Jacks's state law claims are **DISMISSED WITHOUT PREJUDICE**.

IT IS SO ORDERED.

Dated: August 2, 2021

/s/Kathleen B. Burke
Kathleen B. Burke
United States Magistrate Judge